IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No.  24-cr-096-JMC |
| | : | |
| MICHAEL ROBINSON | : | |
| | : | |
| Defendant. | : | |

## SUPPLEMENT TO DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Defendant Michael Robinson ("Mr. Robinson"), by and through his counsel, Michael E. Lawlor, Adam C. Demetriou, and Brennan, McKenna & Lawlor, Chtd., respectfully submits the following Supplement to Defendant's Memorandum in Aid of Sentencing.

I.   **Background**

On February 12, 2024, the Government filed a Criminal Complaint charging Michael Robinson and two co-defendants with offenses related to a series of armed robberies of the Chinatown Walgreens retail location. The next day, Mr. Robinson made his initial appearance in this Court. On February 22, 2024, the Government filed an Indictment charging Mr. Robinson and three co-defendants with offenses related to the series of robberies. On March 11, 2025, Mr. Robinson pled guilty pursuant to a written Plea Agreement. (ECF Nos. 57, 58, 59.) The Plea Agreement,

1

which was drafted by Government counsel, contained certain stipulations regarding an estimated calculation of the advisory guidelines offense level. (ECF No. 57 at 2-3.) Of note, the Plea Agreement estimated that a six-level increase in offense level would apply under § 3A1.2[1] and that a further six-level increase would apply under § 2B3.1(b)(2)(B). After the change of plea hearing, the Court scheduled Mr. Robinson's sentencing for June 10, 2025.[2]

On May 6, 2025, the United States Probation Office filed a Draft Presentence Investigation Report. (ECF No. 65.) The calculation of the advisory guidelines in the Draft PSR differed from the estimates set forth in the parties' Plea Agreement. Notably, the Draft PSR did not include a six-level upward adjustment under USSG § 3A1.2, which applies in certain cases involving an official victim. Objections to the Draft PSR were due by May 20, 2025. Neither Mr. Robinson nor the Government submitted any objections by that date.

On May 12, 2025, the Government filed a consent motion to continue the sentencing hearings for the defendants in this case. (ECF No. 69.) The basis of the motion was that Government counsel would be out of the country on the dates on which the sentencings had been scheduled and co-counsel for the Government had recently left the United States Attorney's Office. On May 13, 2025, the Court issued

---

[1] The estimates in the Plea Agreement *did not* cite any subsection of § 3A1.2.
[2] The three co-defendants were set for sentencing on June 12, 2025.

a Minute Order granting the Government's motion and setting a new schedule for the sentencings in this matter. Mr. Robinson's sentencing was set for July 7, 2025 and sentencings for the three co-defendants were set for July 30, 2025.

On June 25, 2025, the Government filed a joint motion to extend the deadline for filing sentencing memoranda in Mr. Robinson's case through July 1, 2025. The Court granted the motion. On June 26, 2025, the United States Probation Office filed the Final PSR in Mr. Robinson's case. (ECF No. 72.) As reflected in the Final PSR (ECF No. 72 at 32), neither party submitted objections to the Draft PSR. As in the Draft PSR, the Final PSR did not include a six-level increase under § 3A1.2. Indeed, the PSR author noted that the Probation Office had consulted with the United States Sentencing Commission in deciding not to include that enhancement in the advisory guidelines calculation. (PSR ¶ 165.)

On July 1, 2025, the day sentencing memoranda were due, the Government filed a motion for leave to submit objections to the PSR. (ECF No. 74.) In the July 1 motion for leave to file, the Government stated that it had inadvertently missed the May 20 deadline for filing objections to the Draft PSR. The Court granted the Government's request for leave to file. In its filing, the Government noted three objections to the PSR. First, the Government objected to the inclusion of the August 2, 2023 robbery in the guidelines analysis set forth in the PSR. Given that on the occasion at issue, Mr. Robinson was the only person present in the manager's office

with Mr. Williams and that Mr. Robinson had agreed to serve as a purported robbery victim, the Government argued that the August 2 incident did not meet the legal definition of a Hobbs Act robbery. Second, the Government objected to the PSR's analysis of the offense level for the September 2023 and November 2023 robberies. Specifically, the Government argued that a six-level enhancement under § 2B3.1(b)(2)(B) should apply because a firearm was "otherwise used," rather than the five-level enhancement under § 2B3.1(b)(2)(C) for brandishing during the September robbery and no firearm enhancement for the November robbery as set forth in the PSR. Third, and most consequentially for the advisory guidelines range in this case, the Government argued – in a single paragraph – that as to the December 2023, January 2024, and February 2024 robberies, a six-level increase should apply under § 3A1.2(c)(1).

Later in the day on July 1, 2025, Mr. Robinson filed his sentencing memorandum in which he argued for a variant sentence of 60 months of imprisonment, the applicable mandatory minimum.[3] In his memorandum, Mr. Robinson noted that the terms of the Plea Agreement prohibited him from seeking an offense level calculation different from the parties' estimates. Out of an abundance of caution and so as not to be accused of breaching the agreement, Mr.

---

[3] The memorandum was filed under seal in light of the sensitive personal information contained throughout it.

Robinson deferred to the Court with respect to the calculation of the advisory guidelines and nonetheless requested a significant downward variance on the basis of the 18 U.S.C. § 3553(a) factors. The Government also submitted a sentencing memorandum. (ECF No. 76.) The Government's sentencing memorandum did not contain a substantive discussion of the guidelines matters identified in its PSR objections. In the memorandum, the Government sought a sentence of 225 months of imprisonment.

On Sunday, July 6, 2025, Mr. Robinson filed a supplement to his sentencing memorandum. (ECF No. 77.) The supplement contained six letters of support from Mr. Robinson's loved ones and a number of certificates reflecting Mr. Robinson's participation in programming while incarcerated. The supplement did not contain legal argument. That same evening, Government counsel wrote to the undersigned and informed the undersigned that the Government had conducted further research and now took the position that a three-level, rather than six-level, enhancement under § 3A1.2 applied to this case.

On the morning on July 7, 2025, the undersigned arrived to the courthouse early for a status conference in another matter. Around 11 a.m., counsel met with Mr. Robinson in the USMS lockup for a lengthy discussion in advance of sentencing. Without breaching any client confidences, counsel can represent that counsel spent a significant amount of time explaining the various guidelines matters to be

addressed at sentencing, including the Government's favorable announcement that it would no longer seek the six-level official victim enhancement. After counsel left the USMS lockup and retrieved their cell phones, counsel learned that the Court had sent correspondence to the parties indicating that while a hearing would be held that day at 2 p.m., sentencing would not go forward in order to afford the Probation Office time to respond to the Government's PSR objections. Though the Court sent the communication at that time so that the undersigned could inform Mr. Robinson's family members of the change in schedule, several of Mr. Robinson's family members had already arrived to the courthouse.

At the hearing later that afternoon, the Government announced that it was taking the position that a three-level official victim enhancement applied. The Government maintained that the August robbery should not be included in the guidelines calculation and that a six-level increase should apply to the offense levels for the September and November robberies because, in its view, a firearm was otherwise used and not merely brandished. The Court turned to counsel for Mr. Robinson, who explained that they had not submitted briefing on these matters out of concern that Mr. Robinson could have been deemed to have breached the Plea Agreement if he took any position inconsistent with the estimated range contained therein. The Government announced that it would not seek a finding of breach based on any arguments on behalf of Mr. Robinson with respect to the guidelines matters

at issue. The Court then continued the sentencing hearing to July 23 and ordered the parties to submit supplemental briefing by July 11. The Court also directed the Probation Office to file a response on these matters by July 21.

After the conclusion of the hearing, counsel explained to Mr. Robinson and his many concerned family members who had attended court that the sentencing was continued but that Mr. Robinson would benefit from the continuance as it was no longer the case that the Government would be seeking the six-level enhancement. However, shortly after counsel left the courthouse, the Government sent an email explaining that the Government had again revised its position and would now advocate for the six-level official victim enhancement.

## II. The Court Should Not Apply an Enhancement under § 3A1.2

Mr. Robinson agrees with the United States Probation Office that no enhancement under § 3A1.2 is appropriate in this case. Section 3A1.2 provides for an offense level enhancement in certain cases involving official victims. The Guideline contains three subsections and directs a sentencing court to apply the subsection that results in the greatest enhancement. As explained below, each subsection is inapplicable to this case.

### A. Section 3A1.2(a) Does Not Apply

Under § 3A1.2(a), a three-level increase applies "[i]f (1) the victim was (A) a government officer or employee; (B) a former government officer or employee; or

7

(C) a member of the immediate family of a person described in subdivision (A) or (B); and (2) the offense of conviction was motivated by such status[.]" The special police officer victims of the December, January, and February robberies were not *government* officers or employees. As to the December robbery, the special police officer was an employee of Master Security, a *private* security company that contracted with Walgreens to provide security services at the Chinatown location. As to the January and February robberies, the victim special police officers who were present in the manager's office were employees of Georgetown Protective Services, another *private* security company that provided services to Walgreens. Though, as explained below, the conduct of special police officers is regulated and circumscribed by the D.C. government, that circumstance does not convert special police officers who are employed by private companies to provide services to other private companies into government employees or officers.

### B.    Section 3A1.2(b) Does Not Apply

Under § 3A1.2(b), a six-level increase applies "[i]f subsection (a)(1) and (2) apply, and the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person)." This subsection does not apply because, as explained above, § 3A1.2(a) does not apply. Moreover, the applicable Chapter Two

guideline in this case – § 2B3.1 – comes from Part B, which addresses Basic Economic Offenses.[4]

### C. Section 3A1.2(c)[5] Does Not Apply

Section 3A1.2(c) provides as follows:

> If, in a manner creating a substantial risk of serious bodily injury, the defendant or a person for whose conduct the defendant is otherwise accountable—
>
> > (1) knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom; or
> >
> > (2) knowing or having reasonable cause to believe that a person was a prison official, assaulted such official while the defendant (or a person for whose conduct the defendant is otherwise accountable) was in the custody or control of a prison or other correctional facility, increase by 6 levels.

It is well established that "the government bears the burden of proof in seeking sentencing enhancements under the Guidelines[.]" *United States v. Keleta*, 552 F.3d 861, 866 (D.C. Cir. 2009). For the reasons set forth below, the Court should not apply the § 3A1.2(c)(1) enhancement in this case.

---

[4] The Government has never contended that this subsection applies. Mr. Robinson includes this brief analysis for the sake of completeness.

[5] Section 3A1.2(c)(2) applies only in cases where the victim was a "prison official." There is no contention that the victim special police officers in this case were prison officials. Accordingly, Mr. Robinson does not provide detailed argument with respect to this subsection and instead focuses on § 3A1.2(c)(1).

First, in order to safeguard the fundamental fairness of the proceedings, the Court should not permit the Government to argue for the six-level enhancement under § 3A1.2(c). As noted above, in the Plea Agreement, the parties *estimated* that a six-level enhancement under § 3A1.2 would apply. The Probation Office filed a Draft PSR in which it asserted that such an enhancement *did not* apply. Both parties had the opportunity to submit objections. Neither party did. In its July 1 objections, which were filed almost two months after the Draft PSR was circulated, the Government devoted one paragraph to arguing for the six-level enhancement. That paragraph was devoid of any analysis demonstrating why special police officers constituted law enforcement officers under the relevant guideline. Moreover, the Government submitted a sentencing memorandum that spanned 40 pages and did not present any additional legal argument in support of the six-level enhancement. On the night before the scheduled sentencing, the Government alerted counsel that it would be taking the position that a *three-level* enhancement applied, rather than the six-level enhancement. On the basis of that representation, counsel conferred with Mr. Robinson in the lockup. At the hearing, the Government stated on the record that it would be arguing for a three-level enhancement.

Mr. Robinson, and his family members, left the hearing with the belief that notwithstanding the continuance necessitated by the Government's late filing, Mr. Robinson would be left in a more favorable position as no party would be seeking

the six-level enhancement. Shortly after the hearing, the Government changed course again in an email to counsel and Probation. The Court did not continue the sentencing and invite supplemental submissions in order to permit the Government to *change* its position. Rather, the Court did so to allow the parties to set forth their positions and to afford Probation the chance to respond. Now, counsel have placed in the unfortunate situation where they must explain to Mr. Robinson, who has no prior felony convictions and who had never been sentenced to an active period of incarceration, that there is yet more uncertainty concerning the guidelines calculation that there was at the conclusion of the July 7 hearing, a circumstance with significant consequences for Mr. Robinson's mental health and wellbeing. After much back and forth and plenty of time to review the PSR, the Government told the Court and Mr. Robinson that its position was that a three-level increase applied. The Court should not countenance from the Government any contrary argument that would work to the detriment of Mr. Robinson.

Second, the § 3A1.2(c)(1) enhancement does not apply on the merits of this case. The enhancement applies where a defendant or person for whose conduct the defendant is otherwise accountable, knowing or having reasonable cause to believe that a victim is a law enforcement officer, assaults that law enforcement officer during the course of an offense or immediate flight therefrom. The enhancement does not apply in this case because the victim special police officers are *not* "law

enforcement officers." Neither the text of § 3A1.2 nor its commentary defines the term "law enforcement officer." However, a review of relevant authorities makes clear that the special police officers at issue do not meet the test. Mr. Robinson has identified a statute in the federal criminal code that defines the term "law enforcement officer:" 18 U.S.C. § 232(7). In relevant part, that statute provides as follows: "The term 'law enforcement officer' means any officer or employee of the United States, any State, any political subdivision of a State, or the District of Columbia, while engaged in the enforcement or prosecution of any of the criminal laws of the United States, a State, any political subdivision of a State, or the District of Columbia[.]" 18 U.S.C. § 232(7). The victim special police officers do not meet this definition.

    As an initial matter, the victim special police officers were employed by private security companies to act on behalf of Walgreens, a private business entity. In no way can they be considered employees of the District of Columbia. Nor are the victim special police officers properly considered to be "officers" *of the District of Columbia*. Rather, they are officers of their respective private companies who serve as agents of Walgreens within the limits of D.C. law. Under D.C. Code § 5-129.02(a), "[t]he Mayor, on application of any corporation or individual, or in his own discretion, may appoint special police officers and security officers in connection with the property of, or under the charge of, such corporation or

individual; provided, that the special police officers and security officers be paid wholly by the corporation or person on whose account their appointments are made." Under D.C. Code § 23-582(a), "[a] special policeman shall have the same powers as a law enforcement officer to arrest without warrant for offenses committed within premises to which his jurisdiction extends, and may arrest outside the premises on fresh pursuit for offenses committed on the premises." And under D.C. Code § 23-582(b)(2), a private person is authorized to make an arrest of another "in aid of a law enforcement officer **or** special policeman, or other person authorized by law to make an arrest." D.C. Code § 23-582(b)(2) (emphasis added).[6]

Read together, these provisions of the D.C. Code demonstrate that special police officers in the District of Columbia are *not* law enforcement officers. While the D.C. government regulates special police officers and establishes rules for them to follow, the text of these provisions makes clear that special police officers exist separate and apart from law enforcement officers and that they do not perform all of the same functions in the same manner. The authority to exercise, under limited

---

[6] The use of the disjunctive "or" is instructive. It signifies that the terms "law enforcement officer" and "special policeman" have separate and distinct meanings. *See, e.g.*, *United States v. Woods*, 571 U.S. 31, 45-46 (2013) (Scalia, J.) ("Moreover, the operative terms are connected by the conjunction 'or.' While that can sometimes introduce an appositive — a word or phrase that is synonymous with what precedes it ('Vienna or Wien,' 'Batman or the Caped Crusader') — its ordinary use is almost always disjunctive, that is, the words it connects are to 'be given separate meanings.'") (citing *Reiter* v. *Sonotone Corp.*, 442 U. S. 330, 339 (1979)).

circumstances, *some* of the powers of a law enforcement officer does not turn a special police officer into a law enforcement officer. Indeed, the D.C. Court of Appeals has "held that SPOs are not in all their actions equated with regular police officers." *Limpuangthip v. United States*, 932 A.2d 1137, 1145 (D.C. 2007). Section 3A1.2(c)(1) applies only where a specific victim *is* a "law enforcement officer," not where a victim, under *narrow* conditions, is legally permitted to exercise *some* of the powers of a law enforcement officer, as is the case here.

     Third, the enhancement at issue applies only where the defendant or person for whose conduct the defendant is otherwise accountable knows or has reasonable cause to believe that the victim meets the definition of a law enforcement officer. As noted above, special police officers are not law enforcement officers. But even if the Court were to conclude that special police officers are law enforcement officers, there is no evidence that Mr. Robinson or Mr. Williams knew that the victim special police officers were *law enforcement* officers. While an ordinary person would certainly have reason know that a uniformed MPD officer is a law enforcement officer, special police officers, who do not wear the insignia of an official law enforcement agency, are commonly considered private security officers with limited authority – which is what the victim SPOs in this case are.[7]

---

[7] Mr. Robinson notes that the Government has not provided evidence that the victim special police officers were each lawfully registered to act as such on the dates at issue.

14

Finally, to the extent this Court determines that the § 3A1.2(c)(1) enhancement *could* apply in this case, the Court should decline to apply it under the rule of lenity. As this Court has noted,

> "[A]mbiguities in criminal statutes must be resolved in favor of lenity." *United States v. Batchelder*, 442 U.S. 114, 121 (1979). This rule "applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose." *Bifulco v. United States*, 447 U.S. 381, 387 (1980). The Guidelines are penalties, and the rule of lenity applies to them as well. *See, e.g., United States v. Burke*, 888 F.2d 862 (D.C. Cir. 1989); *United States v. Healy*, 729 F. Supp. 140, 143 (D.D.C. 1990).

*United States v. Behrmann*, Crim. No. 89-0445, 1990 U.S. Dist. LEXIS 5658, at *4 (D.D.C. May 10, 1990). "The rule of lenity prevents the interpretation of a federal criminal provision 'so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.'" *United States v. Burnette*, 363 F. Supp. 3d 106, 108 (D.D.C. 2019) (analyzing guidelines-based argument for applying the rule of lenity) (citing *United States v. Villanueva—Sotelo*, 515 F.3d 1234, 1246 (D.C. Cir. 2008)).

Neither the text of § 3A1.2 nor the commentary that accompanies it defines the term "law enforcement officer." The Guideline is silent as to whether the enhancement applies where a victim is a special police officer who is employed by a private entity to provide services to another private entity. Mr. Robinson has not identified any authority interpreting § 3A1.2(c)(1) in the manner the Government urges. Moreover, the Probation Office consulted with the United States Sentencing

15

Commission before taking the position that the enhancement does not apply to this case. The Commission advised the Probation Office that the §3A1.2 does not apply under these circumstances. The application of this enhancement to this case would be the result of something far worse than guesswork – it would represent a rejection of the advice of the very body that promulgated the Guidelines Manual. The Court should not apply the enhancement.

### III. The August 2, 2023 Robbery Should Not Factor into the Guidelines Calculation

Mr. Robinson agrees with the Government that the August 2, 2023 should not be included in the analysis of the advisory guidelines offense level. This incident was not charged substantively and does not satisfy the requirements for a Hobbs Act robbery because Mr. Robinson, who had agreed to serve as a purported victim, was the only person present with Mr. Williams in the manager's office. Accordingly, Mr. Robinson submits that paragraphs 62-67 should be deleted from the PSR. Additionally, the August 2, 2023 robbery should not be included in the grouping analysis in paragraph 101 of the PSR. Therefore, there should be 5.5 units, not 6.5. However, the deletion of the August 2, 2023 robbery does not change the overall guidelines calculation because any number of units over 5 results in a 5-level increase, as is already reflected in the PSR. *See* USSG § 3D1.4.

## IV. The PSR Correctly Assessed the Applicability of § 2B3.1(b)(2)

The Government argues that the PSR author should have applied a six-level enhancement to the calculations related to the September and November robberies under § 2B3.1(b)(2)(B). (ECF No. 74-1 at 2.) The Government is wrong. First, as to the September robbery, the Statement of Offense contains no specific representation with respect to the "pointing" of a firearm or some other use. Instead, the Statement of Offense generally states that Co-Conspirator 2, Mr. Williams, "would brandish" a firearm at employees of the Walgreens and special police officers who were hired to guard the business. (ECF No. 58 at 4.) Despite having ample opportunity to submit additional material to the Probation Office, the Government elected not to do so. Accordingly, the five-level enhancement as set forth in the PSR is appropriate.

As to the November robbery, the Government fails to acknowledge that Mr. Robinson pled guilty to the lesser included of the § 924(c) offense charged in Count Seven, which relates to the November 10, 2023 robbery. That offense carries a five-year mandatory minimum that must run consecutively to the sentence imposed on Count One. Application Note 4 to § 2K2.4, which applies to § 924(c), states as follows: "If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense. A sentence under this guideline

17

accounts for any explosive or weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)." Therefore, no firearm enhancement is appropriate with respect to the November robbery.

## CONCLUSION

With the exception of the inclusion of calculations related to the August 2023 robbery – an error that does not change the overall guidelines range, the PSR correctly calculated the advisory guidelines in this case. After an adjustment for acceptance of responsibility and taking into account the mandatory consecutive penalty on Count Seven, the advisory guidelines recommend a total sentence of 147 to 168 months. But the guidelines are just the starting point. As this Court knows, "[a] sentencing judge cannot simply presume that a Guidelines sentence is the correct sentence. To do so would be to take a large step in the direction of returning to the pre-*Booker* regime." *United States v. Pickett*, 475 F.3d 1347, 1353 (D.C. Cir. 2007). Mr. Robinson is more than numbers on a grid. He is a devoted father of three who has overcome nearly insurmountable challenges in life. He has a minimal criminal history. He has accepted responsibility. He has abundant family support. For the reasons set forth in Mr. Robinson's sentencing submissions and those to be presented at the sentencing hearing, a sentence of 60 months of imprisonment is the sufficient but not greater than necessary sentence in this case.

Respectfully submitted,

_____/s/_____
Michael E. Lawlor
Adam C. Demetriou
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
(301) 474-0044

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of July, 2025, the foregoing was served on all parties via ECF.

_____/s/_____
Michael E. Lawlor